## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

---

In Re:

Juanita Morris,

      Debtor(s).

---

**Case Number: 21-07287**
**Chapter: 13**

## OBJECTION TO CONFIRMATION OF PLAN

      COMES NOW Fifth Third Bank, N.A. ("Secured Creditor"), by its attorneys, Bonial & Associates, P.C., and pursuant to Rule 3015 of the Federal Rules of Bankruptcy Procedure respectfully sets forth its *Objection to Confirmation of Plan* as follows:

      1.      On June 10, 2021, the Debtor(s) filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code as captioned above.

      2.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. Sections 1334 and 157 and 11 U.S.C. Sections 1322 and 1325.

      3.      Debtor(s) are indebted to Secured Creditor on a loan secured by and encumbering certain real property commonly known as <u>9629 S Dobson Ave, Chicago, Illinois 60628</u> ("Property").  Said loan is evidenced by a Promissory Note, Mortgage, and Assignment(s) and loan modification, as may be applicable.  Copies of the applicable loan documents are collectively annexed hereto as group <u>Exhibit A</u>.

      4.      Pursuant to the terms of the Note and Mortgage, the Debtor(s) are required to tender payments to Secured Creditor.  The loan number of Secured Creditor ends in xxxxx6474.

5. Debtor(s) filed a proposed Chapter 13 Plan or amended plan on 06/10/2021 in this case ("Plan").

6. The Plan is objectionable and does not comply with 11 U.S.C. §1325 for the following reasons:

    A. The Plan proposes to value Secured Creditor's second mortgage interest secured solely by the Collateral, which is the Debtor's principal residence. Secured Creditor believes that the value of the Collateral exceeds the value of the first mortgage lien and that its claim should be paid in full.

7. The Plan does not adequately protect Secured Creditor for the foregoing reasons and confirmation should be denied.

**WHEREFORE**, Secured Creditor prays that confirmation of Debtor's Chapter 13 Plan be denied, together with such other relief as this Court deems just and proper.

Dated: July 8, 2021

BONIAL & ASSOCIATES, P.C.

/s/ Wesley T. Kozeny
Wesley T. Kozeny / # 6199471
12400 Olive Blvd, Suite 555

St. Louis, Missouri 63141
Phone: (314) 991-0255
Fax: (314) 991-6755
ILBK@BonialPC.com
Attorney for Fifth Third Bank, N.A.

3062-N-7534

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served upon the following parties in interest via the Court's CM/ECF electronic notification system, or pre-paid regular U.S. Mail if indicated below on July 8, 2021:

**Debtor** *Via U.S. Mail*
Juanita Morris
9629 S Dobson Ave
Chicago, IL 60628

**Debtor's Attorney**
Mitchell Shanks
The Semrad Law Firm, Llc
20 S. Clark Street, 28th floor
Chicago, IL  60603

**Chapter 13 Trustee**
Marilyn O. Marshall
224 South Michigan Ste 800
Chicago, Illinois 60604

**US Trustee**
Office of the U.S.Trustee
219 S. Dearborn St., Room 873
Chicago, Illinois  60604

Respectfully Submitted,

/s/ Wesley T. Kozeny
Wesley T. Kozeny

# SIMPLE INTEREST NOTE AND SECURITY AGREEMENT N

$15,600.00    Lender or Borrower's City MERRILLVILLE    , Note Date or Current Date April 7, 2006

For value received, the undersigned (hereinafter jointly and severally called the "Borrower") promise(s) to pay to the order of HOME EQUITY OF AMERICA, INC. (Name of Lender) (hereinafter called the "Lender"), the principal amount of Fifteen Thousand Six Hundred AND 00/100 dollars, together with interest, the total of payments in the number and amounts and on the due dates shown in the payment schedule below (subject to change if variable rate note). The interest will begin on the date of the Note and Security Agreement at the annual rate of 9.250 %. ☐ The interest rate is subject to change as provided herein. Under no circumstances shall the interest rate be raised above 25% in Illinois*(Variable Rate).

☒ The interest rate is not subject to change.

Payable at the Lender, 1000 E. 80TH PLACE N. TOWER MERRILLVILLE, IN 46410

Loan Fee: Borrower agrees to pay a non-refundable loan fee of $ 175.00 .

## TRUTH IN LENDING ACT DISCLOSURES

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate | FINANCE CHARGE<br>The dollar amount the credit will cost you if you pay as scheduled. (e) | Amount Financed<br>The amount of credit provided to you or on your behalf. | Total of Payments<br>The amount you will have paid after you have made all payments as scheduled. (e) |
|---|---|---|---|
| 9.749 % | $ 20,665.22 | $ 14,985.00 | $ 35,650.22 |

Your payment schedule will be:

| Number of Payments (e) | Amount of Payments | When Payments Are Due |
|---|---|---|
| 179 | $ 129.50 | Monthly on the 27th Day of Each Month Starting May, 2006 |
| 1 | $ 12,469.72 | ON April 27, 2021 |

*Variable Rate: The Annual Percentage Rate may increase or decrease during the term of this transaction. Your interest rate will be computed based on an index equal to the highest Prime Rate as published in the Wall Street Journal on the business day immediately preceding the first business day of January, April, July, and October (the "Index Date") plus or minus a margin equal to the difference between your initial interest rate and said Prime Rate on the Index Date preceding the date of your loan. The effective date of each interest rate change will be the first business day following the Index Date (the "Change Date"). The INTEREST RATE will change only if there has been a change in the index in the quarter preceding a Change Date. The INTEREST RATE will not increase or decrease more than 1.5% per year and will not increase or decrease more than 6% during the term of the loan. If your INTEREST RATE has reached one of these limits it will not change again until the next Change Date following a change in the index after you become eligible for an increase or decrease. Any change in the INTEREST RATE will take the form of more or less payments of the same amount (as the case may be) unless this loan is for more than 60 months, in which case any increase may take the form of more payments of the same amount, or higher payment amounts, or both, at the Lender's discretion. If your loan was for $5000.00 at 15% for 36 months with a monthly payment of $173.33, and the INTEREST RATE increased to 16.5% after six months, you would have to make one additional partial payment of $115.25. If your loan was for $10,000.00 at 15% for 120 months with a monthly payment of $161.33, and the INTEREST RATE increased to 16.5% after 12 months, and if the Lender so determined, you would pay your loan on schedule, but your remaining 108 regular payments would increase to $169.96 each.

Property Insurance May be obtained from anyone you desire that is acceptable to the Lender.
Security: To secure the loan, you are giving Lender a security interest in your deposit accounts, all collateral securing other loans with Lender and:

☐ The goods or property being purchased.
☐ Collateral Assignment of Beneficial Interest in Land Trust. You further are instructing Land Trustee to execute a mortgage on the following property:
☒ ,9629 S DOBSON AVE CHICAGO, IL 606280000,

NOTE: Collateral securing other loans with Lender may also secure this loan.
Late Charges:    If a payment is more than 10 days late, you will be charged 5% of the payment amount.
Prepayment Charge:    If you pay off this note early, you will not have to pay a charge.
Assumption:    If this loan is to purchase and is secured by your principal dwelling, and if checked here,
    ☒ someone buying your dwelling cannot assume the remainder of this purchase money mortgage loan on the original terms
    ☐ someone buying your dwelling may, subject to conditions, be allowed to assume the remainder of the mortgage on the original terms
Required Deposit:    The Annual Percentage Rate does not reflect the effect of any required deposit.
This is a four page agreement. See other provisions hereof and any other contract documents for further information about non-payment, default, the right to accelerate the maturity of the obligation, prepayment charge and security interests.
(e) means an estimate.

## INSURANCE
Credit life insurance and credit disability insurance are not required to obtain credit. AT THIS TIME, THESE PRODUCTS ARE NOT AVAILABLE.
Credit Insurance is available from AMERICAN UNITED LIFE INSURANCE COMPANY    P.O. BOX 368 INDIANAPOLIS, IN 46206-0368
(Address)
No credit insurance will be provided unless you sign below and the premium costs shown below are included in the Amount Financed and paid. (See the Notice of Proposed Credit Insurance on page four).

| Type | Premium | Signature | |
|---|---|---|---|
| Single Credit Life | $ | I want credit life insurance | _____ (name insured) |
| Joint Credit Life | $ | We want credit life insurance | _____ (name insured)<br>_____ (name insured) |
| Credit Disability | $ | I want credit disability insurance | _____ (name insured) |

PAGE 1 OF 2
Initials of Borrower(s) J.M.                                IL  ILS1 (07/04)

Borrower authorizes the payments listed below:

### ITEMIZATION OF THE AMOUNT FINANCED

Itemization of the amount financed of $ _____ .

1. $ _____ Amount given to you directly.
2. $ _____ Amount paid on your account with the Lender.
   Account numbers:
   _____
   _____
   _____

3. $ _____ Amount(s) paid to others on your behalf (Total a through j). (Lender may be retaining a portion of this amount.)
   a) $ _____ for Credit Life and/or Credit Disability Insurance.
   b) $ _____ to Public Officials.
   c) $ _____ for Title Examination (Paid To _____ ).
   d) $ _____ for Appraiser.
   e) $ _____ for Document Preparation (Paid To Lender).
   f) $ _____ for Single Interest Insurance.
   g) $ _____ for Loan Fee (Paid To Lender).
   h) $ _____ to _____ .
   i) $ _____ for Extended Warranty Protection (Paid To _____ Seller's Name )
   j) $ _____ for Flood Certification (Paid To _____ Seller's Name ).
4. $ _____ Prepaid finance charge.
5. $ _____ Total amount financed (Total of 1 through 3 minus 4).

Single Interest Insurance: Single Interest Insurance is required, but you may obtain it from anyone who is acceptable to the Lender. The cost for the term is shown above in Item 3f. This contract does not include coverage for bodily injury and property damage caused to others, nor does it protect your interest in the collateral from any loss or damage.

SECURITY AGREEMENT: To secure payment of this liability to Lender and the performance of any obligations you now or in the future have, you give Lender a security interest in the property described as security above, any other property now or hereafter in Lender's possession, any rights to the payment of money from Lender, the items of property defined on page three hereof, any credit insurance proceeds and refunds and the following described property:

| Year | Trade Name | Model No. or Name | Body Type | Serial No. |
|------|------------|-------------------|-----------|------------|
|      |            |                   |           |            |
|      |            |                   |           |            |

"Other Property" 9629 S DOBSON AVE CHICAGO, IL 60628-0000 ,
"Other Property" Collateral Assignment of Beneficial Interest in Land Trust. You further are instructing Land Trustee to execute a mortgage on the following property:

Together with all replacements thereof and all attachments, accessories and equipment now or hereafter attached, added or affixed thereto (The property securing this Note is hereinafter called "Collateral"). THIS AGREEMENT IS SUBJECT TO THE ADDITIONAL PROVISIONS SET FORTH ON PAGES THREE AND FOUR HEREOF, THE SAME BEING INCORPORATED HEREIN BY REFERENCE, AND IS ALSO SUBJECT TO THE TERMS AND PROVISIONS SET FORTH IN THE BUYER'S RESIDUAL VALUE AGREEMENT, IF APPLICABLE, ATTACHED HERETO AND INCORPORATED BY REFERENCE.

Any part of this Note and Security Agreement contrary to the laws of any state having jurisdiction with respect thereto shall be deemed null and void and hereby is waived but shall not invalidate other parts of this Note and Security Agreement in said state.

The undersigned hereby severally waive presentment, demand for payment, protest, notice of protest and notice of nonpayment of this Note.

### BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS NOTE AND SECURITY AGREEMENT AND THE ABOVE INFORMATION AT THE TIME OF SIGNING

### NOTICE TO COSIGNER

You are being asked to become liable on this debt. Think carefully before you do. If the borrower doesn't pay the debt, you will have to. Be sure you can afford to pay if you have to, and that you want to accept this responsibility.
You may have to pay up to the full amount of the debt if the borrower does not pay. You may also have to pay late fees or collection costs, which increase this amount.
The LENDER can collect this debt from you without first trying to collect from the borrower. The LENDER can use the same collection methods against you that can be used against the borrower, such as suing you, garnishing your wages, etc. If this debt is ever in default, that fact may become a part of YOUR credit record.

(GIVE COMPLETE NAMES AND ADDRESSES)   SIGNATURES (WRITE IN FULL AND IN INK)

JUANITA MORRIS

*Juanita Morris*
JUANITA MORRIS

9629 S DOBSON AVE

CHICAGO, IL 60628-0000

1. **LATE CHARGES:** If any monthly installment stipulated herein is not paid on or before ten days after the due date thereof, (whether by acceleration or otherwise) in addition to all other rights and remedies of Lender given by law or the terms of this Note and Security Agreement, Borrower promises to pay to Lender a delinquent charge of 5% of the payment amount. Acceptance of such delinquent charge by Lender shall not constitute a waiver of any default or any rights of Lender hereunder.
2. **PREPAYMENT CHARGE:** Borrower may prepay the obligation under this Note and Security Agreement in full at any time prior to maturity. If Borrower prepays the obligation in full over six months prior to the estimated final payment date, Borrower agrees to pay an early payment charge of 1% of the principal balance with a minimum charge of $150.00 and a maximum charge of $500.00. Partial prepayment shall not excuse any subsequent payment due. (Not applicable in Illinois.)
3. **INTEREST AFTER MATURITY:** Interest after maturity shall continue at the rate then in effect or as thereafter adjusted in accordance with the variable rate disclosures. In addition, after maturity, Borrower agrees to pay Lender a fixed charge of $25.00 or Borrower agrees that Lender may, without notice, increase the interest rate by 6% per annum, whichever is greater.
4. **SECURITY:** Borrower hereby assigns to Lender and agrees that Lender shall have a lien upon and security interest in any and all accounts, balances, credits, deposits or other monies of or in the name of Borrower or another or others now or hereafter with Lender.
5. **RETURNED CHECK FEE:** A fee of $25.00 may, at Lender's discretion, be imposed whenever a check offered in payment on this Note is returned to the Lender unpaid for any reason. This fee is subject to change without notice to the Borrower, and the Borrower agrees to pay the fee actually charged by Lender at the time the check is returned.
6. Borrower agrees that if Lender is sued or otherwise directed to respond to any civil, criminal or administrative demand relating to the loan evidenced hereby (including but not limited to, the amount due, any collateral, or the underlying transaction) Borrower will pay Lender, upon request, an administrative fee of $28 per hour and $.25 per copy to comply with such demand. Borrower also agrees that any amount not paid within fifteen days of Lender's request may be added to the principal amount of the remaining indebtedness subject to the rate of interest on the Note until paid.
7. Borrower warrants that Borrower has, or, if this creates a purchase money security interest, will acquire, an unencumbered title to, and the possession of the Collateral, and agrees to keep the Collateral free of all other liens whatsoever, and the Borrower will not sell, otherwise dispose of, encumber, or give any other security interest in Collateral without the prior written consent of Lender.
8. Borrower warrants and agrees that if the Collateral is, or will be affixed to realty, Borrower will, upon demand, furnish Lender with a disclaimer, signed by all persons having an interest in the real estate, of any interest in the Collateral.
9. Borrower has executed a mortgage or has caused any trustee holding the real property for the benefit of Borrower to execute a mortgage granting Lender a lien in the Collateral if the Collateral is real property.
10. Borrower agrees that:
    a. Borrower will be responsible for any loss of, or damage to, the Collateral and will maintain and keep the same in good repair and condition, in default of which Lender may, at its option, maintain and repair the Collateral and add the cost thereof to the obligation secured. Borrower will promptly upon demand, reimburse Lender of the cost of any such maintenance or repairs.
    b. Borrower will not, without the prior written consent of Lender, move the Collateral from the county in which it is to be located, and will promptly notify Lender of any change in Borrower's residence or any of the Borrower's places of business.
    c. Borrower will buy property insurance on the Collateral protecting against loss or physical damage and subject to a maximum deductible of $500.00, or as Lender shall otherwise require. Borrower will name Lender as loss payee on any such policy. In the event of loss or damage to the Collateral, Lender may require additional security or assurances of payment before allowing insurance proceeds to be used to repair or replace the Collateral. Borrower agrees that if the insurance proceeds do not cover the amounts still owed on the Note and Security Agreement, Borrower will pay the difference. Borrower may purchase or provide the insurance through any insurance company reasonably acceptable to the Lender. Borrower will keep the insurance in full force and effect until the amounts due on this Note and Security Agreement are paid in full. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Borrower grants Lender power of attorney to make, adjust and settle claims and to endorse drafts and collect proceeds under this insurance.
    d. Unless Borrower provides Lender with evidence of the insurance coverage required by Borrower's agreement with Lender, Lender may purchase insurance at Borrower's expense to protect Lender's interests in the Collateral. This insurance may, but need not, protect Borrower's interests. The coverage that Lender purchases may not pay any claim that Borrower makes or any claim that is made against Borrower in connection with the Collateral. Borrower may later cancel any insurance purchased by Lender, but only after providing Lender with evidence that Borrower has obtained insurance as required by Borrower's agreement with Lender. If Lender purchases insurance for the Collateral, Borrower will be responsible for the costs of that insurance, including interest and any other charges Lender may impose in connection with the placement of the insurance, until the effective date of the cancellation or expiration of the insurance. The costs of the insurance may be added to Borrower's total outstanding balance or obligation. The costs of the insurance may be more than the cost of insurance Borrower may be able to obtain on Borrower's own. Borrower's payment may be increased to provide for payment of the costs of insurance plus interest thereon.
    e. If any Collateral consists of real property held in any land trust, Borrower will perform or will cause the land trustee to perform all of the covenants contained in the Mortgage executed by the land trustee in favor of Lender regardless if, by the terms of such Mortgage, such covenant is a covenant of the Land Trustee.
11. **OTHER SECURITY:** Borrower agrees that any present or future agreement, securing any other debt Borrower owes Lender, will also secure the payment of this Note and Security Agreement. However, an agreement securing any other debt will not secure this Note and Security Agreement if either of the following applies:
    a. Lender fails to make a disclosure required by law of the existence of such security agreement, or
    b. Lender fails to provide (to any person entitled) any notice of right of rescission required by law for this transaction.
12. **DEFAULTS:** Upon the occurrence of any of the following described events, each of which will constitute a default, Lender shall have all rights and remedies provided by law, and without limiting the generality of the foregoing, shall include the election to accelerate without notice or demand the final maturity of all of the obligations secured:
    a. The nonpayment, when the same shall be due, of any installment or other payment on account of the principal or interest of this Note;
    b. The breach of any warranty or agreement by Borrower herein contained, or contained in any mortgage or security agreement executed by Borrower in connection herewith or executed by any trustee at the direction of Borrower;
    c. The death or incompetency of any individual Borrower, or, if Borrower is a partnership, of a partner;
    d. The default of Borrower under the terms of any lease of, or mortgage on, the premises upon which the Collateral may be located;
    e. Any assignment for the benefit of the creditors or the commencement of any bankruptcy, receivership, reorganization, foreclosure, insolvency or liquidation proceedings by or against the Borrower, or if Borrower is a partnership, by an agreement as partner;
    f. The reasonable determination by Lender at any time that it is inadequately secured hereby with respect to the obligation; or
    g. The creation of any other lien or the issuance of any attachment against the Collateral or the entry of judgment against Borrower;
    h. The occurrence of a default under any other obligation of Borrower, individually or jointly, to Lender;
    i. Seizure, levy or confiscation under any legal or governmental process against the collateral.

IN THE EVENT OF DEFAULT, BORROWER AGREES THAT LENDER MAY, WITHOUT NOTICE, INCREASE THE INTEREST RATE BY 6% PER ANNUM. Additionally, in the event of a default, Borrower agrees on demand to deliver Collateral to Lender, and Lender may, without notice or demand and without legal process, enter upon the premises of Borrower and take possession of the Collateral on said premises or wherever found. Further, Borrower agrees to pay and remains liable to Lender for any costs of disposition of the Collateral as well as for reasonable attorneys' fees, court costs and any and every deficiency after the proceeds from the sale of the Collateral are applied as provided by the Uniform Commercial Code as enacted in the state governing this instrument.

13. No failure on the part of Lender to exercise any of its rights hereunder shall be deemed a waiver of such rights or of any default.
14. As used herein, "Borrower" if there be more than one, shall mean "all the Borrowers and each or any of them" and in such case they are jointly and severally bound hereby.
15. A photographic or other reproduction of this Note and Security Agreement or a financing statement is sufficient as a financing statement.
16. In no event shall the interest rate due hereunder exceed the maximum rate of interest under applicable state or federal usury laws.
17. This Note and Security Agreement, the amounts contracted for and the interest to be charged shall be governed by, and construed and interpreted in accordance with, the laws of the State of Illinois, without regard to its conflict of laws principles, and applicable federal laws and regulations, and the obligations, rights and remedies of the parties shall be determined in accordance with such laws.

### NOTICE OF PROPOSED CREDIT INSURANCE-OHIO RESIDENTS

This notice applies only if Borrower(s) chose to obtain group credit life or group credit disability insurance. The type of insurance, the premium and the name and address of the insurance company are indicated on the first page of this Note and Security agreement. This insurance, subject to acceptance by the insurer, covers only the person(s) who signed the request for insurance. Only the named insured will be covered under credit disability insurance. The term of insurance will commence on the date the indebtedness is incurred and will expire on the original maturity date of this Note, unless terminated earlier as provided for in the Certificate of Insurance. Credit life insurance insures the scheduled unpaid balance on the date of death. Credit disability insurance insures each regular installment payment while the insured is disabled. Credit disability insurance monthly coverage is limited to the originally scheduled monthly payment or the policy limitation. If the insurance is accepted by the insurer, a Certificate of Insurance which describes the insurance coverage Borrower(s) have obtained will be delivered to Borrower(s) within 30 days. In the event of termination of the insurance prior to the scheduled maturity date of the indebtedness, any refund of an amount paid by the Borrower(s) for insurance shall be credited promptly to the Borrower(s) account Borrower(s) must refer to the Certificate of Insurance for the complete terms and conditions of Borrower(s) Insurance.

The following notice is applicable if this agreement involves a purchase of goods or services to which the FTC HOLDER in DUE COURSE RULE applies.

### IF THE COLLATERAL IS TO BE USED PRIMARILY FOR PERSONAL, FAMILY OR HOUSEHOLD PURPOSES:
### NOTICE
ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF THE GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

Credit Reporting:

If you believe information we report about the credit history on your account(s) is incomplete, inaccurate or outdated, you must provide us with clear written documentation including the name on the account, the account number and the nature of the disputed information. Please write to us at HOME EQUITY OF AMERICA, INC. 38 Fountain Square Plaza, Post Office Box 639090, Cincinnati, OH 45263-9090.

Page 4 of 4
Initials of Borrower(s) _____

IL    ILS4 (05/02)

# BankUnited

ADDENDUM TO THE NOTE
Prepayment Penalty
(Three Year Penalty Period)

This prepayment penalty addendum ("Addendum") is made this  7  day of  April 2006  ,
and is incorporated into and shall be deemed to amend and supplement the Note made by the undersigned (the "Borrower") to BankUnited, FSB
(the "Lender") and dated the same date as this Addendum (the "Note").

The Note is secured by a Mortgage or Deed of Trust or comparable security instrument (the "Security Instrument") covering the property (the "Property") identified in the Security Instrument.

This Addendum provides for a penalty with respect to prepayments of the obligation represented by the Note made within the first three years of the date of the Note.

Accordingly, Paragraph 5 of the Note (Borrower's right to prepay) is replaced with this prepayment penalty addendum.

**Additional Covenants.** In addition to the covenants and agreements made in the Note, Borrower and Lender further covenant and agree as follows:

**Borrowers Right To Prepay – Prepayment Penalty.**

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment". When I make a prepayment, I will give notice to the Note Holder in writing that I am doing so.

Subject to the prepayment penalty specified below, I may make a full prepayment or partial prepayments of my obligation. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

If I make a full prepayment within the first three years of the date of the Note, that pays the loan off in full, I will pay a prepayment penalty in the amount of six months' advance interest (at the rate of interest in effect at the time the full prepayment is made) on the original principal balance the loan had on the initial date of the Note.

If I make partial prepayments of this loan during the first three years of the Note term, beginning on the date of the Note, I will pay a prepayment penalty in the amount of six months' advance interest (at the rate of interest in effect at the time any such partial prepayments are made) on the amount by which the aggregate prepayments made within any consecutive twelve month period exceed twenty percent (20%) of the original principal balance the loan had on the initial date of the Note. No prepayment penalty will be assessed for any prepayment made after the first three years of the Note term.

The Note Holder's failure to collect a prepayment penalty at the time a prepayment is received shall not be deemed a waiver of such penalty and any such penalty calculated in accordance with this section shall be payable on demand.

All other terms and conditions of the above referenced Note remain in full force and effect. By signing below, Borrower accepts and agrees to the terms and covenants contained in this Prepayment Penalty Addendum.

WITNESS THE HAND(S) AND SEALS OF THE UNDERSIGNED.

_/s/ Juanita Morris_ (SEAL)     _____ (SEAL)
BORROWER JUANITA MORRIS              BORROWER

_____ (SEAL)     _____ (SEAL)
BORROWER                                                  BORROWER

DATE April 7, 2006

COOK County
Document was prepared by (and should be returned to:)
HOME EQUITY OF AMERICA, INC.
ATTN:EQUITY LENDING DEPARTMENT
1000 E. 80TH PLACE N. TOWER MERRILLVILLE, IN 46410

After Recording Send to:
Marine Title Corp.
15 Spinning Wheel Rd., Ste 26
Hinsdale IL 60521



Doc#: 0611846013 Fee: $34.00
Eugene "Gene" Moore RHSP Fee:$10.00
Cook County Recorder of Deeds
Date: 04/28/2006 08:15 AM Pg: 1 of 6

MARINE TITLE CORP
FILE#

(Space Above This Line for Recording Data)

# OPEN-END MORTGAGE

THIS MORTGAGE ("Security Instrument") is given on April 7, 2006
The mortgagor is
JUANITA MORRIS A SINGLE PERSON

("Borrower"). This Security Instrument is given to HOME EQUITY OF AMERICA, INC.
which is organized and existing under the laws of      OHIO      and whose address is
           1000 E. 80TH PLACE N. TOWER MERRILLVILLE, IN 46410                 ("Lender").
Borrower owes Lender the principal sum of   Fifteen Thousand Six Hundred AND 00/100

Dollars (U.S. 15,600.00     ). This debt is evidenced by Borrower's note dated the same date as this Security Instrument
("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on 04/27/21  .

TO SECURE to Lender (a) the repayment of the Indebtedness evidenced by the Loan Documents and any extensions or renewals
thereof, with interest thereon, the payment of all other funds, with interest thereon, advanced in accordance herewith to protect the
security of this Mortgage, and the performance of the covenants and agreements of Borrower herein contained, or contained in the
Loan Documents or any document executed in connection therewith, and (b) the repayment of any and all other loans, advances or
indebtedness of Borrower owed to Lender and all affiliates of Lender, of any nature whatsoever (collectively the "Obligations") and
(c) the repayment of any future advances, with interest thereon, made to Borrower by Lender pursuant to Item 21 hereof (herein
"Future Advances"), Borrower does hereby mortgage, warrant, grant and convey to Lender, with mortgage covenants, the following
described property located in the County of COOK                , State of ILLINOIS              , to wit (herein,
the "Real Estate"):

SEE ATTACHED EXHIBIT "A"

which has the address of  9629 S DOBSON AVE CHICAGO, IL 60628-0000
("Property Address");

MARINE TITLE CORP.

## SCHEDULE C
**PROPERTY DESCRIPTION**

The land referred to in this Commitment is described as follows:

THE SOUTH 20 FEET OF LOTS 10 AND 11 (EXCEPT THE SOUTH 12.5 FEET THEREOF) IN BLOCK 28 IN COTTAGE GROVE HEIGHTS ADDITION, BEING A SUBDIVISION OF PART OF THE NORTH 1/2 OF SECTION 11, TOWNSHIP 37 NORTH, RANGE 14, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

COMMONLY KNOWN AS: 9629 S. DOBSON, CHICAGO, ILLINOIS 60628

ALTA Commitment
Schedule C

TOGETHER WITH all the improvements now or hereafter erected on the Real Estate, and all easements, rights, appurtenances, rents, royalties, mineral, oil and gas rights and profits, and all fixtures now or hereafter permanently attached to, the Real Estate, and all right, title and interest of Borrower in and to the land lying in the streets and roads, in front of and adjoining the Real Estate, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the Real Estate covered by this Mortgage; and all of the foregoing, together with said Real Estate (or the leasehold estate if this Mortgage is on a leasehold) are herein referred to as the "Property",

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant, and convey the Property, that the Property is unencumbered, and that Borrower will warrant and defend the title of the Property against all claims and demands.

COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal and Interest.** Borrower shall promptly pay when due the principal and the interest on the Indebtedness evidenced by the Loan Documents, any extensions or renewals thereof, prepayment and late charges as provided in the Loan Documents, and the principal and interest on any Future Advances, Obligations or other sums secured by this Mortgage.

2. **Hazard Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage", and such other hazards as Lender may require or as may be required by applicable law (including flood insurance required by Item 27 hereof), and in such amounts and for such periods as Lender may require; provided, however, that Lender shall not require that the amount of such coverage exceed that amount of coverage required to pay the sums secured by this Mortgage unless required by applicable law.

The insurance carrier providing the insurance shall be chosen by Borrower, subject to approval by Lender, provided that such approval shall not be unreasonably withheld. Unless otherwise specified, all premiums on insurance policies shall be paid by Borrower making payment, when due, directly to the insurance carrier and providing receipt of said payment to Lender if requested by Lender.

All insurance policies and renewals thereof shall be in form acceptable to lender and shall include a standard mortgagee clause in favor of and in form acceptable to Lender and shall provide that the policies shall not be amended or canceled without thirty (30) days prior written notice to Lender. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Lender is hereby given full power to collect any insurance proceeds or to settle and compromise any insurance claims or bring suit to recover thereunder.

Lender is authorized to apply the net proceeds of any insurance claim, after deducting all costs of collection, including attorney's fees, at Lender's option, either to restoration or repair of the Property or to the sum secured by this Mortgage, and if, in the sole discretion of Lender, Lender is not satisfied with the adequacy of the collateral for the remaining indebtedness, Lender may without further notice or demand, elect to declare the whole of the remaining Indebtedness due and payable and may invoke any of the remedies afforded it by law, and/or by this Mortgage, including those permitted in Item 17 hereof.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of any installment payments agreed to by Lender and Borrower, or change the amount of such installments. If, under Item 17 hereof, the Property is acquired by Lender, all right, title and interest of Borrower in and to any insurance policies and in and to the proceeds thereof, resulting form damage to the Property prior to the sale or acquisition, shall pass to Lender to the extent of the sum secured by this Mortgage, immediately prior to such sale or acquisition.

3. **Charges; Liens.** Borrower shall pay all taxes, liens, assessments and other charges, fines and impositions attributable to the Property, and leasehold payments or ground rents, if any, by Borrower making payment, when due, directly to the Payee thereof. Borrower shall promptly furnish to Lender all notices of amounts due under this paragraph, and Borrower shall promptly furnish Lender receipts evidencing such payment.

4. **Application of Payments.** Unless otherwise agreed, all payments are to be applied in the following order: costs, expenses, attorney's fees, interest, escrow, late fees or penalties and then principal. In the event this mortgage secures more than one note or other debt instrument, at Lender's option, payments may be applied on any of the outstanding notes, or concurrently on more than one of the outstanding notes.

5. **Preservation and Maintenance of Property; Leasehold; Condominiums; Planned Unit Developments.** Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Mortgage is on a leasehold. If this Mortgage is on a unit in a condominium or planned unit development, Borrower shall perform all of Borrower's obligations under the declaration of covenants creating or governing the condominium or planned unit development, and the by-laws and regulations of the condominium or planned unit development.

6. **Protection of Lender's Security.** If Borrower fails to perform the covenants and agreements contained in this Mortgage, or if any action or proceeding is commenced with materially affects Lender's interest in the Property, including, but not limited to, eminent domain, foreclosure, code enforcements, deed restrictions and registrations, or arrangements or proceedings involving a bankrupt or decedent, Lender at Lender's option, upon notice to Borrower, may make such appearances, disburse such sums, and take such action as is necessary to protect Lender's interest, including, but not limited to, disbursement of reasonable attorney's fees and entry upon the Property to make repairs.

Any amounts disbursed by Lender pursuant to this Item 6, with interest thereon, shall become additional indebtedness with Borrower secured by this Mortgage. Unless Borrower and Lender agree to other terms of payment, such amounts shall be payable upon notice from Lender to Borrower requesting payment thereof, and shall bear interest from the date of disbursement at the applicable rate as prescribed in the Loan Documents evidencing the Indebtedness or the highest rate under applicable law. Nothing contained in this Item 6 shall require Lender to incur any expense or take any action hereunder.

7. **Environmental Laws.** (a) Except as set forth in Exhibit 7(a) hereto, Borrower has obtained all permits, licenses and other authorizations which are required under any now existing or hereafter enacted or amended federal, state or local statute, ordinance, code or regulation affecting or regulating the environment ("Environmental Laws") and, to the best of Borrower's knowledge, Borrower is in compliance in all material respects with all terms and conditions of the required permits, licenses and authorizations, and is also in compliance in all material respects with all other limitations, restrictions, conditions, standards, prohibitions, requirements, obligations, schedules and timetables contained in the Environmental Laws;

(b) Except as set forth in Exhibit 7(b) hereto, Borrower is not aware of, and has not received notice of, any past, present or future events, conditions, circumstances, activities, practices, incidents, actions or plans which may interfere with or prevent compliance or continued compliance in any material respect with Environmental Laws, or may give rise to any material common law or legal liability, or otherwise form the basis of any material claim, action, demand, suit, proceeding, hearing, study or investigation, based on or related to the manufacture, processing, distribution, use, treatment, storage, disposal, transport, or handling, or the emission, discharge, release or threatened release into the environment, of any pollutant, contaminant, chemical, or industrial, toxic or hazardous substance or waste; and

(c) Except as set forth in Exhibit 7(c) hereto, there is no civil, criminal or administrative action, suit, demand, claim hearing, notice or demand letter, notice of violation, investigation, or proceeding pending or threatened against Borrower, relating in any way to Environmental Laws; and

(d) Lender will not be deemed to assume any liability or obligation or duty to clean-up or dispose of wastes on or relating to the Property. Borrower agrees to remain fully liable and will indemnify, defend and hold Lender harmless from any and all costs, losses and expenses (including, without limitation attorney's fees) relating to any Environmental Laws or Borrower's breach of any of the foregoing representations or warranties. The provisions of this Item 7 will survive the release or satisfaction of this Mortgage or the foreclosure hereof.

**8. Inspection.** Lender may make or cause to be made reasonable entries upon and inspections of the Property, provided that Lender shall give Borrower notice prior to any inspection specifying reasonable cause therefor related to Lender's interest in the Property. Additionally, Lender shall have the right to inspect the books and records of the operation of the Property and make copies thereof during normal business hours and upon notice to Borrower. Borrower shall keep its books and records in accordance with generally accepted accounting principles covering the operation of the Property, should the same be income-producing, Lender may in its discretion require Borrower to deliver to Lender within 90 days after the close of each of the Borrower's fiscal years an audited statement of condition and profit and loss statement for the Property for the preceding fiscal year, prepared and certified by a certified public accountant acceptable to Lender.

**9. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. No awards or settlements shall be accepted without Lender's prior written consent.

Lender is authorized to settle any claim, collect any award, and apply the net proceeds, after deducting all costs of collection including attorney's fees, at Lender's option, either to restoration or repair of the Property, or to the sums secured by this Mortgage, and if, in the sole discretion of Lender, Lender is not satisfied with the adequacy of collateral for any remaining indebtedness, Lender may without further demand or notice elect to declare the whole of the remaining indebtedness immediately due and payable and may invoke any of the remedies afforded it by law, and/or by this Mortgage, including those permitted by Item 17 hereof.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of any installment payments referred to in Item 1 hereof or change the amount of such installments.

**10. Borrower Not Released.** Extension of the time for payment or modification of amortization of the sums secured by this Mortgage granted by Lender to any successor in interest of Borrower approved by Lender shall not operate to release, in any manner, the liability of the original Borrower and Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor or refuse time for payment or otherwise modify amortization of the sums secured by this Mortgage by reason of any demand made by the original Borrower or Borrower's successors in interest.

**11. Forbearance By Lender Not A Waiver.** Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of, or preclude the exercise of, any such right or remedy. The procurement of insurance or the payment of taxes or other liens or charges by Lender shall not be a waiver of Lender's right to accelerate the maturity of the Indebtedness, Future Advances and Obligations secured by this Mortgage.

**12. Remedies Cumulative.** All remedies provided in this Mortgage are distinct and cumulative to any other right or remedy under this Mortgage, the note evidencing the Indebtedness or any of the Loan Documents, or as afforded by law or equity and may be exercised concurrently, independently or successively.

**13. Successors and Assigns Bound; Joint and Several Liability; Captions.** The covenants and agreements contained herein shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Borrower and Lender, subject to the provisions of Items 16 and 17 hereof. All covenants and agreements of Borrower shall be joint and several. The captions and headings of the Items of this Mortgage are for convenience only and are not to be used to interpret or define the provisions hereof.

**14. Notice.** Except for any notice required under applicable law to be given in another manner, any notice to Borrower provided for in this Mortgage shall be given by mailing such notice by certified or registered mail, return receipt requested, to Borrower at the address set forth above or as carried on the records of the Lender. Any notice to Lender shall be given by certified or registered mail, return receipt requested, to Lender's address stated herein or to such other address as Lender may designate by notice to Borrower as provided herein.

**15. Governing Law; Severability.** This transaction shall be governed by the laws of the State where the Property is located. In the event that any provision or clause of this Mortgage or the Loan Documents conflicts with applicable law, such conflict shall not affect other provisions of either this Mortgage or the Loan Documents which can be given effect without the conflicting provision, and in this regard, the provisions of this Mortgage and the Loan Documents are declared severable.

**16. Transfer of the Property and Interest Therein.** If all or any part of the Property or an interest therein is sold, transferred, encumbered or otherwise conveyed by Borrower, without Lender's prior written consent, or if any contract to do any of the same is entered into by Borrower without Lender's prior written consent, excluding a transfer by devise, descent or, by operation of law upon the death of a joint tenant, it shall be deemed to increase the Lender's risk and Lender may, at Lender's option, either declare all the sums secured by this Mortgage to be immediately due and payable, or may consent to said conveyance in writing and may increase the interest rate of Indebtedness and/or impose whatever conditions it may deem necessary to compensate it for the increased risk. Lender shall have waived such option to accelerate if, prior to the conveyance, Lender and the person to whom the Property is to be conveyed reach agreement in writing that the credit of such person is satisfactory to Lender and that the interest payable on the sum secured by this Mortgage shall be at such rate as Lender shall request, If Lender has waived the option to accelerate provided in Item 17, and if Borrower's successor in interest has executed a written assumption agreement accepted in writing by Lender, Lender may, in its discretion, release Borrower from all obligations under this Mortgage and the Loan Documents, and any such decision to release or not to release Borrower shall be evidenced by said written assumption agreement.

If Borrower herein is other than an individual or individuals acting on their own behalf, any change in the legal or beneficial ownership of such Borrower or entity which changes the identity of any person or persons having, directly or indirectly, more than 10% of either the legal or beneficial ownership of either such Borrower, such entity, or of the Property, shall be deemed to be a transfer within the meaning of this Item. Such transfer shall not be made, created, or suffered to be made or created, without Lender's prior written consent.

**17. Acceleration; Remedies.** Upon the occurrence of an Event of Default (as defined in the Loan Documents) or a default in the payment of the Indebtedness, the Obligations or Future Advances hereby secured or any part thereof in accordance with the terms of this Mortgage, of the aforesaid Loan Documents or of any other document executed in conjunction with this Mortgage or the Loan Documents, or in the performance of any covenant or agreement of Borrower in this Mortgage or in the payment or performance of any document or instrument securing any Indebtedness or Obligation, or upon the filing of any lien or charge against the Property or any part thereof which is not removed to the satisfaction of Lender within a period of 30 days thereafter, the institution of any proceeding to enforce the lien or charge upon the Property or any part thereof, the filing of any proceeding by or against Borrower in bankruptcy, insolvency or similar proceedings, assignment by Borrower of its property for the benefit of its creditors, the placing of Borrower's property in receivership, trusteeship or conservatorship with or without action or suit in any Court, or the abandonment by Borrower of all or any part of the Property (herein "Events of Default"), then the Lender, at Lender's option, may declare all of the sums secured by this Mortgage to be immediately due and payable without notice to the Borrower.

The sums secured hereby shall bear interest at the highest rate permitted to be charged on delinquent installments of principal and interest under the Loan Documents or the highest rate allowed by law, and this Mortgage shall become absolute and subject to foreclosure. Lender shall be entitled to collect in such proceeding all expenses of foreclosure, including, but not limited to, costs of documentary evidence, abstracts, title reports and reasonable attorney's fees.

18. **Borrower's Right to Redeem.** Borrower shall have such rights of redemption as are provided by the law of the State where the Property is located.

19. **Waiver of Homestead.** Borrower waives all rights of homestead exemption in the property.

20. **Assignments of Rents.** Upon the occurrence of an Event of Default, the Lender shall have the right without notice and without regard to the adequacy of any security for the sums hereby secured and with or without the appointment of a receiver, to enter upon and take possession of the Property, and Lender may operate, manage, rent and lease the Property and collect any rents, issues, income and profits therefrom, the same being hereby absolutely assigned and transferred to and for the benefit and protection of Lender, contingent only upon the occurrence of an Event of Default. All rents collected by Lender may be applied to the cost of operation, maintenance and repair, and reasonable collection, management and attorney's fees, and then in reduction of any sums hereby secured in such other proportions as Lender may determine.

21. **Future Advances.** Upon request by Borrower, Lender, at Lender's option, may make Future Advances to Borrower. Such future and additional loan advances, with interest thereon, shall be secured by this Mortgage, when evidenced by promissory notes stating that such notes are secured hereby. At no time shall the principal amount of the indebtedness secured by this Mortgage, not including sums advanced in accordance herewith to protect the security of this Mortgage, exceed the original amount of the Indebtedness plus $0.

22. **Rental of Property Restricted.** Borrower shall not make, or suffer to be made, any lease of the Property or any part thereof, or any modification, extension or cancellation of any existing or future lease, without Lender's prior written consent. If, with Lender's written consent, there is a lease on the Property, Borrower is to perform all of Borrower's obligations under such lease or leases. Borrower is not to accept any prepayment of rent for more than one month in advance without Lender's prior written consent. Upon Lender's request from time to time, Borrower is to furnish Lender a statement, in affidavit form, in such reasonable detail as Lender may require, of all of the leases on the Property and, on demand, to furnish Lender executed counterparts of any and all such leases.

If Borrower shall enter into any lease agreement, written or oral, concerning the Property or any part thereof without having obtained Lender's prior written consent, Lender shall not be bound by, or obligated to perform under, any such lease in the event it exercises its remedies set forth in Item 20 or any other provision hereof.

23. **Release.** Upon payment of all Indebtedness, Obligations and Future Advances secured by this Mortgage, Lender shall discharge this Mortgage with any costs paid by Borrower.

24. **Mortgage as Security For Other Liabilities.** This Mortgage shall serve as security for every other liability or liabilities of the Borrower to the Lender and any of its affiliates however created, direct or contingent, due or to become due, whether now or hereafter existing and whether the same may have been or shall be participated in, in whole or in part by others, by trust agreement or otherwise, or on any manner acquired by or accruing to the holder hereof, whether by agreement with, or by assignment or endorsement to the Lender by anyone whomsoever.

It is the express intent of the parties hereto that this Mortgage and the note or notes given contemporaneously herewith, and any extensions or renewals thereof, shall also evidence and secure any additional loan advances made after the delivery of this Mortgage to the recorder for record.

Notwithstanding the above, no debt or other liability, as described above shall be secured by the within Mortgage, if it shall hereafter be created in a "consumer credit transaction" as defined in Title 1, Consumer Credit Protection Act, 15 U.S.C.A., Sections 1601 et. seq., as amended, or any successor federal statute, or any applicable state statue containing substantially similar provisions.

25. **Ohio Covenant.** If the Property is located in Ohio, Borrower and Lender covenant that Lender is authorized to do all things provided to be done by a mortgagee under section 1311.14 of the Ohio Revised Code.

26. **Uniform Commercial Code Security Agreement.** Borrower hereby grants Lender a security interest in all items included in the Property which can be subject to a security interest under the Uniform Commercial Code. Borrower will execute and deliver to Lender all financing statements and other documents requested by Lender to perfect its security in such property, and Borrower will pay the expense of filing such documents and of conducting a search of records in which documents are recorded. The covenants and agreements of Borrower throughout this Mortgage will apply to all items which are subject to the security interest granted herein. Upon the occurrence of any Event of Default under this Mortgage, Lender will have the remedies of a secured party under the Uniform Commercial Code and, at Lender's sole option, may also invoke the remedies provided in this Mortgage. In exercising any of such remedies, Lender may proceed against the items of real property specified above as part of the Property separately or together and in any order whatsoever, without in any way affecting the availability of Lender's remedies under the Uniform Commercial Code or of the remedies in this Mortgage. This Mortgage may be filed with appropriate authorities as a Uniform Commercial Code Financing Statement.

27. **Flood Insurance.** If any part of any of the Property lies within a "special flood hazard area" as defined and specified by the United States Department of Housing and Urban Development pursuant to the Flood Disaster Protection Act of 1973 as now in effect; Borrower shall (i) promptly purchase and pay the premiums for flood insurance policies as Lender deems required so that Lender shall be deemed in compliance with the rules and regulations and provisions of the Flood Disaster Protection Act of 1973 as then in effect: and (ii) deliver such policies to Lender together with evidence satisfactory to Lender that the premiums therefor have been paid. Such policies of flood insurance shall be in a form satisfactory to Lender, shall name Lender as an insured thereunder, shall provide that losses thereunder be payable to Lender pursuant to such forms of loss payable clause as Lender may approve, shall be for an amount at least equal to the Indebtedness or the maximum limit of coverage made available with respect to any of the Property under the National Flood Insurance Act of 1968, as amended, whichever is less, and shall be noncancelable as to Lender except upon thirty (30) days prior written notice given by the insurer to Lender. Within thirty (30) days prior to the expiration date of each such flood insurance policy, Borrower shall deliver to Lender a renewal policy or endorsement together with evidence satisfactory to Lender that the premium therefor has been paid.

28. **Jury Waiver.** BORROWER WAIVES THE RIGHT TO TRIAL BY JURY OF ANY MATTERS ARISING OUT OF THIS MORTGAGE OR THE TRANSACTION CONTEMPLATED HEREBY.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.
Witnesses: ALL SIGNATURES MUST BE IN BLACK INK.

_____   *Juanita Morris* _____(Seal)
                                            JUANITA MORRIS

_____   _____(Seal)

                                            _____(Seal)

                                            _____(Seal)

STATE OF _Illinois_ , _Cook_ COUNTY

On this 7th DAY OF April, 2006, before me, a Notary Public in and for said County and State, personally appeared
JUANITA MORRIS A SINGLE PERSON

the individual(s) who executed the foregoing instrument and acknowledged that HE/**SHE** did examine and read the same and did sign the foregoing instrument, and that the same is HIS/**HER** free act and deed.
IN WITNESS WHEREOF, I have hereunto set my hand and official seal.

My Commission Expires: 5/19/09

(Seal)                                      _Hynissah L Williams_
                                            Notary Public

This instrument was prepared by: HOME EQUITY OF AMERICA, INC.
                                 1000 E. 80TH PLACE N. TOWER MERRILLVILLE, IN 46410

OFFICIAL SEAL
HYNISSAH L WILLIAMS
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:05/19/09